Common Pleas Court of Sandusky County.

## LICHTENSTEIN V. LEVIN.

Decided August 17, 1927.

*B. A. Fouche,* for plaintiff.
*I. G. Stout,* for defendant.

OVERMYER, J.

This cause was submitted to the court on the petition of the plaintiff and the answer of the defendant—a general denial—and the evidence, and is an action brought by plaintiff to enjoin the defendant from pursuing a course of conduct alleged to amount to "unfair competition" in trade.

The plaintiff for the past six years has conducted a store on West State street in Fremont, under the trade name, "The Army Store," selling a general line of workmen's clothing and merchandise, and the defendant since March 1, 1927, having a similar store and similar merchandise, immediately adjacent to the store of plaintiff, which he designated the "Cut Price Army Store." Plaintiff's store front has been painted an "Ox blood red" for several years, and the defendant's store front has been painted an "Ox blood red," this being done contemporaneous with his leasing of the room last March.

The plaintiff alleges in his petition the foregoing and other facts, and further alleges that the defendant has used every possible means to imitate the physical appearance of plaintiff's store, in name, color scheme, merchandise, window signs, street signs, and advertising, and fur-

ther alleges that the defendant's clerks and employees took advantage of the mistakes of customers who came into the defendant's store thinking they were in plaintiff's store, by giving false answers as to the whereabouts of "Sam," which is plaintiff's name, and selling goods to such persons who were in the store by mistake, thereby deceiving such customers and the public. He also alleges that the conduct of the defendant in all these particulars was designedly and intentionally had and done for the purpose of securing some of plaintiff's trade by deceiving the public and the trade by making them believe by artifice and confusion that they were buying at the plaintiff's store when in fact they were buying in defendant's store, and that this course of conduct constitutes unfair competition in trade.

The court find from the evidence that the plaintiff used the name "The Army Store" as a trade name from the beginning of his business about six years ago; that he used this name on his windows and door panels and elsewhere; that several years ago he painted his store front ox-blood red to distinguish it from other fronts on the same street; that he secured permission of city authorities to erect a vertical sign above and over the sidewalk in front of his place of business with the words "The Army Store" thereon, the word "The" being on a horizontal board at the top, and the words "Army Store" on a vertical board below it; that the plaintiff spent five or six thousand dollars in advertising his place of business and merchandise during the past six years under the name "The Army Store" and frequently referring to it as the store with the "red front"; that the evidence discloses that customers by mistake entered the store of defendant, thinking they were entering the store of plaintiff, and made purchases while under that impression; that when defendant ordered his signs for the sidewalk and storefront he ordered the painter to paint them the same color and design as plaintiff's; that he ordered the painter to put the words "Cut-price" in smaller letters than the words "Army Store"; that the defendant ordered and

authorized the color of his store front to be of the same color as that of plaintiff; that the employes of defendant did tell customers that the plaintiff, "Sam," was out and "would be back soon," etc. These facts are proven by the evidence.

What is "unfair competition"? Ruling Case Law, Vol. 26, at page 875, defines the term as follows:

"Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor."

The court has examined many cases on the subject of trade marks, trade names, and unfair competition, and in all of them the intent with which the thing has been done is a very important, in fact, practically the controlling element, and the courts hold that where the simulation is decided and apparent, and the result thereof is that people are deceived, the intent will be presumed. The courts further hold without exception that in cases of unfair competition it is not a single act, a single name, or a single simulation that would furnish grounds for equitable relief, but it is the combination of things, a general course of conduct, imitation in name, color of building, character of merchandise, signs, advertising, etc., that such combination of imitations could not be accidental but must be by design, and that it is the effect of such combination that produces the result against which a plaintiff complains and against which he is entitled to relief.

In an early Ohio case, decided in 1898, and reported in 8 Ohio Dec., 485, where the facts were somewhat similar to the facts here, the court say:

"I am satisfied from the evidence that the above mentioned acts of defendant were done with the intention of misleading the public into the belief that the business of the defendant was the business of the plaintiff. It also appears in evidence that people seeking the store of plaintiff have been misled by the appearance of the store

of defendant to believe that it was the store of the plaintiff and have made purchases therefrom while under that impression; that the clerks in the store of the defendant have given the impression to persons entering such store while in search of the store of plaintiff, that they were in plaintiff's store," etc.

The court say further:

"There have grown up recently a class of cases which would be classed under 'Unfair competition' and which has called so strongly for the interference of a court of equity that the courts have interfered, not upon the ground that there has been any interference with the right of a trade mark, but upon the ground that to permit the defendant to pursue his business rivalry in the manner in which it was done was a fraud upon the rights of the plaintiff."

In the same case the court say that the principle upon which the courts afford relief is that "No man shall be permitted to sell his goods as the goods of another, and that where one tradesman resorts to the use of any artifice or contrivance for the purpose of representing his goods or his business as the goods or business of a rival tradesman, thereby deceiving the people by causing them to trade with him when they intended to and would have otherwise traded with his rival, a fraud is committed which a court of equity will not allow to thrive, and equity will not concern itself about the means by which the fraud is done," and the court cites a number of cases in support of this view. (See Ruling Case Law, Vol. 26, page 881.)

One of the cases cited is *Weinstock* v. *Marks*, 109 Cal., 529, where the plaintiff's store was called the "Mechanics Store" and the defendant opened a store next door and called it the "Mechanical Store," made the front of his store of the same peculiar architecture as that of plaintiff, and in every way made his store so similar in appearance to that of plaintiff that passers-by frequently went into the store believing it to be the store of plaintiff." In that case the court found the acts were designedly done and granted plaintiff relief by injunction.

Volume 26 Ruling Case Law, page 878, says:

"The existence of a valid trade mark is not essential to a right of action for unfair competition. Irrespective thereof, persons have no right to dress their goods up in such manner as to deceive an intending purchaser and induce him to believe he is buying those of the plaintiff, and they may be restrained from so doing. To entitle a person to such relief a proprietary interest in the terms or symbols used is held not to be essential, it being sufficient if he has an interest in the good will of the business or in the other property threatened."

Quoting further from Ruling Case Law, Volume 26, page 883, where it is said:

"It has been held that a mandatory injunction to compel a person to distinguish his place of business in some mode or form that shall be a sufficient indication that it is a different place of business from that of a competitor should be granted, where he has imitated the building of another dealer in the same business so closely as to deceive customers and with intent to deceive them, and has omitted the use of any name or sign which could designate the true proprietorship of the store."

Further, on the same page appears the following:

"While it is true that the degree of resemblance between names or devices which is sufficient to warrant the interference of a court of equity is not capable of exact definition, and that each case must depend for a correct solution on its own peculiar facts and circumstances, yet it may be stated generally that the similarity must be such as is likely to mislead purchasers of ordinary caution and prudence, or in other words, the ordinary buyer," etc.— "nor is it essential that a purchaser has been actually deceived, a manifest liability to deception being sufficient."

Quoting again from the 8th Ohio Dec., page 488, where the court say:

"The plaintiff in this case is clearly entitled to relief, and the only question in regard to which I have any doubt is as to the form of the decree. * * * I have very serious doubts whether I could enjoin the defendant from painting a globe upon his house under any and all circumstances. I certainly cannot enjoin him from painting his house any color he chooses, or from locating his business

next door to that of plaintiff, or from carrying on the same kind of business in such location; but he has no right *to so combine* the exercise of these rights as to lead people to believe that his store is the store of plaintiff, and he certainly has no right by himself, or through his agents and employes, to be engaged in continuously representing his business as the business of plaintiff."

So in the case at bar, the court does not say that it would have the power to order that the defendant must paint his store a certain color or restrain him from painting it any color he chooses; that the court could not say that he could not use the name "Army Store" either alone or in combination with other words, for these are not words in which the plaintiff could claim a proprietorship, as there are hundreds of "Army Stores" in the land, many of them being as far removed from any connection with the Army as the poles are from one another; the court could not say that the defendant could not engage in business on that street, or adjacent to plaintiff, and in the same kind of business as plaintiff. Taken singly, none of the foregoing things would furnish a basis for equitable relief and a court would have no power to interfere. But a combination of these things which results in such similarity of physical appearance, name, color scheme, signs, advertising, merchandise, etc., that it can readily be seen that it was designedly and intentionally done to get trade away from a competitor by deceiving the buying public, and which does deceive the buying public, is "unfair competition" in trade, a fraud on the plaintiff and his rights and a fraud on his customers, and courts have the power to grant relief against it. Nor does the court need to point out to defendant the means and methods he must employ to be free from contempt; that will be for him to figure out.

In the case of *Cleveland Opera Company* v. *Cleveland Civic Opera Assn.*, 23 C. C. (N. S.), 486, decided in 1912, the Court of Appeals say:

"There may be an unfair use for trade purposes of words which are not capable of being an arbitrary trade mark or trade name, because they are geographically or

purely descriptive; but when used unfairly tend to create confusion on the part of the public as to goods or firms, and when so used and such confusion results, their use will be enjoined."

If there had been any doubt as to the design and intention of the defendant to simulate the appearance and business of plaintiff and divert business from the plaintiff to the defendant, that doubt would be removed by the testimony and conduct of the defendant's landlord, Irving Pollock, a witness for the defendant.

Pollock and his father run a store similar to plaintiff's in the room immediately east of plaintiff, and they own the room in which defendant conducts business immediately west of plaintiff, so that plaintiff is between the two stores of Pollock and defendant, both of whom entered business there recently and three and five years respectively after plaintiff opened his store. Pollock bought the building in which defendant conducts business about a year ago. Pollock sat at the trial table with the defendant and consulted freely with defendant's counsel, and in his conduct and testimony on the stand clearly and unmistakably showed his feeling toward plaintiff. He stated on the stand that the plaintiff tried to boycott them when they began business and clearly conveyed the inference that they were trying to have revenge. Intention, as before stated, is a controlling element in cases of unfair competition, and while Pollock is not a party to this proceeding and no order can here be made as to him, it is clearly apparent that there was and is a scheme between the defendant and the Pollocks to ruin the business of plaintiff if they can. This is a free country, even for proprietors of "Army Stores," and if by fair business methods one can forge his business ahead at the expense of the other, he has a right to do so. But it must be by fair methods, and courts will enjoin unfair methods as against proprietors of "Army Stores" as well as any other tradesmen.

The court finds from the evidence, including a personal inspection of the premises made at the request of both

parties, that the plaintiff is entitled to equitable relief, and the form of the decree will be that used and entered in cases of this character, viz.:

The defendant is enjoined from in any manner either by herself or her agents or employes, representing her business as the business of plaintiff, and from using symbols, devices, painting, signs or advertisements, or any combination of such elements as to give to her store the appearance of the plaintiff's store or being the plaintiff's store or part thereof, and from doing the aforementioned or other acts that would tend to mislead the public into thinking the defendant's store to be the plaintiff's store.

Appeal bond is fixed at one thousand dollars.

Common Pleas Court of Montgomery County.

HOLLENCAMP V. GREULICH. *

Decided July 9, 1928.

SNEDIKER, J.

This action is brought in this court to sell the real estate belonging to the estate of Andrew Greulich late of this county, deceased, for the purpose of paying his valid debts, the personal property not being sufficient. To the petition plaintiff administrator has attached an exhibit showing the debts which it will be necessary to pay out of the proceeds of the sale of the real estate.

As one of the pleadings filed in the case, we find the answer of Millard Greulich, which is to the effect that he is a legal heir and representative of Joseph Greulich, de-

---

* Affirmed by the Court of Appeals.